**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| EDDIE WILSON, |
| *Plaintiff*, |
| v. |
| ISAAC FULLWOOD, JR., et al. |
| *Defendants*. |

Civil Action No. 09-2365 (CKK)

**MEMORANDUM OPINION**
**(March 28, 2011)**

I.      **Introduction.**

Plaintiff is currently imprisoned at United States Penitentiary Hazelton ("USP Hazelton"), where he is serving aggregate sentences imposed for a crime spree in 1975 consisting of kidnaping, robbery, burglary, rape, and first-degree murder, in violation of various portions of the District of Columbia Code, as well as for a 1978 violation of the United States Code for possession of a controlled substance in prison.  Plaintiff has had four parole hearings, one in each of the following years: 2001, 2004, 2005, and 2008.  Plaintiff now brings this action against three current Commissioners and one former Commissioner of the United States Parole Commission ("Commission" or "USPC") under 42 U.S.C. § 1983, alleging that the Commission violated the *Ex Post Facto* Clause of the United States Constitution in its application of certain parole guidelines in lieu of others at his four parole hearings.  Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

In this Memorandum Opinion, the Court will first discuss the background of this case, including a summary of Plaintiff's crimes and convictions, an explanation of the regulatory framework applicable to Plaintiff's parole hearings, a summary of Plaintiff's four parole hearings, and a summary of Plaintiff's allegations in this case and Defendant's motion to dismiss. The Court will then discuss the standards applicable to the evaluation of Defendants' motion and evaluate that motion. For the reasons discussed below, the motion will be granted.

## II.   Background.

### A.   Plaintiff's Crimes and Convictions.

The United States District Court for the Middle District of Pennsylvania, when considering a petition for a writ of habeas corpus filed by Plaintiff, succinctly set forth the facts concerning Plaintiff's crimes and convictions:[1]

> On October 5, 1976, Wilson entered a guilty plea in the Superior Court for the District of Columbia to thirty-six (36) felony counts. On January 31, 1977, Wilson was sentenced on first degree murder and armed robbery charges to an aggregate sentence of twenty-eight (28) years to life imprisonment. . . . Wilson subsequently was sentenced to concurrent sentences on the remaining thirty-four (34) counts of kidnapping, robbery, and burglary and/or rape.
>
> While serving his District of Columbia sentence at the Lorton Reformatory in Virginia, which was then the District's long-term correctional facility, Wilson was charged with possession with intent to distribute Pentazocin and possession of a knife. Following a jury trial in the United States District Court for the Eastern District of Virginia, Wilson was found guilty of the drug

---

[1] The Court neither takes judicial notice of nor separately finds these facts. *See Anderson v. The Islamic Republic of Iran*, No. 08-cv-535, 2010 WL 4871189, at *4 (D.D.C. Dec. 1, 2010) (quoting Fed. R. Evid. 201(b)) (noting that "[a] difficult issue arises concerning judicial notice of . . . courts' prior findings of facts" because "[w]hile such findings in a prior proceeding are 'capable of accurate and ready determination' from judicial records," they are not necessarily "'not subject to reasonable dispute'"). Instead, the Court assumes the truth of the averments in the complaint, *see* discussion *infra* Part III.B., and merely quotes the Middle District of Pennsylvania as a convenient means of providing background information consistent with those averments.

offense and not guilty of the weapons charge.  On October 16, 1987, Wilson was
sentenced to a term of imprisonment of three (3) years to run consecutive to his
District of Columbia sentences.

In January 2001, Wilson successfully challenged the decision by the
Bureau of Prisons ("BOP") to have his 1987 federal sentence lodged as a detainer
to be served only after he had completed his District of Columbia sentences.  By
letter dated January 23, 2001, Wilson was notified that the BOP had reversed its
decision, and that "The three year sentence is aggregated with your D.C. Code
[sentences] as originally computed and your eligibility date is October 29, 2000."
Accordingly, Wilson became eligible for parole.

*Wilson v. U.S. Parole Comm'n*, No. 4:06-CV-1853, 2010 WL 569554, at *1 (M.D. Pa. Feb. 11,

2010) (internal citations omitted) (alteration in original).  Plaintiff is currently serving his

aggregate sentence at United States Penitentiary Hazelton.  *Inmate Locator*, Fed. Bureau of

Prisons, http://www.bop.gov/iloc2/LocateInmate.jsp (search for Register Number 01581-000).

### B.    Parole Regulatory Framework.

The Commission exercises parole authority over both U.S. Code offenders, 28 C.F.R.

§ 2.2 (2010), and D.C. Code offenders, *id.* § 2.70.  The Commission's authority over U.S. Code

offenders derives from 42 U.S.C. § 4203. The Commission's authority over D.C. Code offenders

derives from the National Capital Revitalization and Self-Government Improvement Act, Pub. L.

No. 105-33, § 11231, 111 Stat. 712, 734–37 (1997) [hereinafter D.C. Revitalization Act], which

"abolished the D.C. Parole Board and directed the USPC to conduct parole hearings for D.C.

Code offenders 'pursuant to the parole laws and regulations of the District of Columbia,'"

*Sellmon v. Reilly*, 551 F. Supp. 2d 66, 68 (D.D.C. 2008) [hereinafter *Sellmon I*] (quoting

§ 11231(c)).

When the Commission considers for parole "prisoners serving any combination of U.S.

and D.C. Code sentences that have been aggregated by the U.S. Bureau of Prisons" (BOP), the

Commission is directed by regulation to "apply the guidelines at [28 C.F.R.] § 2.20 to the

prisoner's U.S. Code crimes, and the guidelines of the District of Columbia Board of Parole to the prisoner's D.C. Code crimes." 28 C.F.R. § 2.65(a)–(b) (2010).[2]  Although the process is thus bifurcated, parole consideration is nonetheless made "on the basis of a single parole eligibility and mandatory release date on the aggregate sentence" and "every decision made by the Commission, including the grant, denial, and revocation of parole, is made on the basis of the aggregate sentence." *Id.* § 2.65(a).

Concerning the guidelines applicable to U.S. Code offenders, significant to this case is a change affecting crimes committed between 1984 and 1987, a time period that includes Plaintiff's 1987 drug conviction.  Under the Sentencing Reform Act of 1984, Pub. L. No. 98–473, title II, ch. II, 98 Stat. 1987 [hereinafter SRA], Congress mandated that the Commission "set a release date" for a parolee "within the range that applies to the prisoner under the applicable parole guideline," *id.* § 235(b)(3), 98 Stat. at 2032.  "Before enactment of the SRA, the Parole Commission was permitted to go beyond the guideline range in cases with 'good cause for so doing.'"  *Lyons v. Mendez*, 303 F.3d 285, 288 n.4 (3d Cir. 2002) (quoting 18 U.S.C. § 4206(c) (1982)).  However, under the Sentencing Act of 1987, Pub. L. No. 101-182, 101 Stat. 1266, Congress amended § 235(b)(3) to require that a release date be set for a parolee "pursuant to section 4206 of title 18, United States Code," thus restoring the Commission's discretion to go beyond the guideline range for good cause, *id.* § 2(b), 101 Stat. at 1266; *Lyons*, 303 F.3d at 288 n.5.

---

[2] An aggregate sentence is "the sum of all the maximum consecutive terms to which an inmate is sentenced.  For sentences that run concurrently with each other, the shorter of the two terms is subsumed by the longer, and the aggregate term may include only the longer term, not both terms."  *Cosgrove v. Thornburgh*, No. 80-cv-516, 1992 U.S. Dist. LEXIS 12483, at *13 (D.D.C. Aug. 14, 1992).

Concerning the guidelines applicable to D.C. Code offenders, such guidelines have changed several times in the years since Plaintiff's 1976 crimes.  From 1932 to 1985, parole eligibility was determined by a D.C. Parole Board that operated with nearly complete discretion. *Austin v. Reilly*, 606 F. Supp. 2d 4, 8 (D.D.C. 2009).  Under regulations promulgated in 1972 and in effect at the time of Plaintiff's crimes (the "1972 Regulations"), the Board took "into account some of the following factors in making it's determination as to parole:"

> (a) The offense, noting the nature of the violation, mitigating or aggravating circumstances and the activities and adjustment of the offender following arrest if on bond or in the community under any presentence type arrangement.
> (b) Prior history of criminality noting the nature and pattern of any prior offenses as they may relate to the current circumstances.
> (c) Personal and social history of the offender, including such factors as his family situation, educational development, socialization, marital history, employment history, use of leisure time and prior military experience, if any.
> (d) Physical and emotional health and/or problems which may have played a role in the individual's socialization process, and efforts made to overcome any such problems.
> (e) Institutional experience, including information as to the offender's overall general adjustment, his ability to handle interpersonal relationships, his behavior responses, his planning for himself, setting meaningful goals in areas of academic schooling, vocational education or training, involvements in self-improvement activity and therapy and his utilization of available resources to overcome recognized problems.  Achievements in accomplishing goals and efforts put forth in any involvements in established programs to overcome problems are carefully evaluated.
> (f) Community resources available to assist the offender with regard to his needs and problems, which will supplement treatment and training programs begun in the institution, and be available to assist the offender to further serve in his efforts to reintegrate himself back into the community and within his family unit as a productive useful individual.

9 D.C.R.R. ch. 2, § 105.1 (1972).  In 1981, the District of Columbia promulgated new parole regulations (the "1981 Regulations"), but the language of § 105.1 remained unchanged.  9 D.C.R.R. ch.2, § 105.1 (1981).  Under both the 1972 and 1981 Regulations, "the Board had no

formalized scoring system . . . . The decision to grant parole remained within the discretion of the Board . . . ." *Davis v. Henderson*, 652 A.2d 634, 635 (1995), *quoted in Austin*, 606 F. Supp. 2d at 9.[3]

"In 1985, the D.C. Board of Parole adopted guidelines to channel its discretion; these guidelines were published and codified in 1987" (the "1987 Regulations"). *Sellmon I*, 551 F. Supp. 2d at 69–71; *see* D.C. Mun. Regs. tit. 28, § 204 (1987). The Court explained in *Sellmon I* how the 1987 Regulations operated:

> After serving his or her minimum sentence, a D.C. Code offender became eligible to considered for parole. Once a prisoner became eligible for parole, the D.C. Parole Board would then determine whether he or she was suitable for parole. Under the 1987 Regulations, the D.C. Parole Board would make this determination employing an analytical framework that relied on [two] pre- and [two] post-incarceration factors. . . .
>
> The first . . . factor the Board considered was the degree of risk posed by an offender [as calculated by the Salient Factor Score (SFS)], an actuarial risk assessment device that relies exclusively on information known at the time of incarceration. In calculating a prisoner's SFS, the Board considered six pre-incarceration factors: (1) prior convictions and adjudications; (2) prior commitments of more than 30 days; (3) age at the commission of current offense; (4) recent commitment-free period; (5) status of prisoner at time of current offense; and (6) history of heroin or opiate dependence. The SFS placed the candidate into one of four risk categories (10–9 = low risk, 8–6 = fair risk, 5–4 = moderate risk, or 3–0 = high risk) from which the Board would determine a baseline number of points ("base point score") that provided 0 for low risk, 1 for fair risk, 2 for moderate risk, and 3 for high risk. The Board would then take the base point score and adjust it using the remaining pre-incarceration factor and the two-post incarceration factors to arrive at the Point Assignment Grid Score ("total point score").
>
> The remaining pre-incarceration factor was the type of risk posed by the offender . . . . If the Board determined that the parole candidate's current offense,

---

[3] Although both *Austin* and *Davis* concerned only the 1981 version of § 105.1, because the 1972 version of that section was identical to the 1981 version, the logic of these cases concerning the 1981 version applies with equal force to the 1972 version. *See Austin*, 606 F. Supp. 2d at 8–9; *Davis*, 952 A.2d at 635. *Compare* 9 D.C.R.R. ch. 2, § 105.1 (1972) *with* 9 D.C.R.R. ch. 2, § 105.1 (1981).

or two prior felony convictions involved violence, weapons, and/or drug trafficking, then the Board could increase the baseline point score by a maximum of one point.

The two post-incarceration factors were the offender's institutional adjustment, an aggravating factor applicable to those cases in which the Board made findings that disciplinary infractions were either serious or repetitious enough to impact negatively on the parole decision, and the offender's program participation, a mitigating factor applicable to those cases in which the Board has made findings that the program or work accomplishments of the prisoner were substantial enough to impact favorably on the parole decision. The Board could add one point to the candidate's baseline point score for negative institutional behavior and subtract one point for sustained program or work assignment achievement.

Once the Board calculated the offender's total point score, the 1987 Regulations directed that a parole request could be granted (with varying levels of supervision) at the initial hearing if the offender's final adjusted score was 0, 1, or 2, or denied if the offender's final adjusted score was 3–5. In the case of a parole rehearing, parole could be granted for a score of 0–3, or denied if the score was 4–5. The Board recognized, however, that there occasionally will be unique circumstances that are not taken into account by either the Salient Factor Score or the type of risk assessment, but that none-the-less should impact on the release decision. In such a case, the Parole Board could depart from the action indicated by the SFS by referencing an applicable aggravating or mitigating factor . . . . [Such factors were whether]: (1) the offender repeatedly failed under parole supervision; (2) the current offense involved ongoing criminal behavior; (3) the offender had a lengthy history of criminally related alcohol abuse; (4) the offender had a history of repetitive sophisticated criminal behavior; (5) the offender had an unusually serious prior record of at least five felony convictions; or (6) the offender's crime involved unusual cruelty to victims.

In 1991, to ensure consistent and equitable application of the 1987 Regulations, the Board adopted a policy guideline to define the terms used in the appendices to the 1987 Regulations . . . .

*Sellmon I*, 551 F. Supp. 2d at 69–71 (internal citations, quotations, quotation marks, alterations,

ellipses, and footnotes omitted).

"Between 1998 and 2000, the USPC drafted new parole regulations and guidelines (the

'2000 Guidelines') that it applied to any offender who received an initial parole hearing after

August 5, 1998." *Id.* at 71. These regulations are currently in effect and enumerated at 28

C.F.R. § 2.80 (2010). The Court also explained in *Sellmon I* how these guidelines operate:

Similar to the 1987 Regulations, the 2000 Guidelines use a point score system to determine whether a candidate is presumptively suitable for parole. This system begins with a calculation of the Salient Factor Score ("SFS"), which assesses the degree of risk that a parole candidate will become a recidivist. *See* 28 C.F.R. §§ 2.80(c)[,] 2.20. The candidate's "criminal conduct (including the nature and circumstances of the current offense) . . . [is then] used to assist the Commission in determining the probable seriousness of the recidivism that is predicted by the Salient Factor Score." *Id.* § 2.80(c). Like the 1987 Regulations, the 2000 Guidelines also determine the "type of risk" posed by the parole candidate by looking at his or her history of violence, the use of weapon, and/or death of the victim as a result of the candidate's crime. *Id.* § 2.80(f). Under the 2000 Guidelines, a candidate can receive as many as 7 points based on the "type of risk" factor. *Id.* . . . .

After calculating both the degree and type of risk posed by an offender, the base point score is converted into a "base guideline range" of months that are added to the parolee's minimum sentence imposed by the court. *See* [*id.*] § 2.80(h). Any offender with a base point score of greater than 3 points will, absent superior program achievement, have additional months added to his or her parole eligibility period. *Id.* §[] 2.80(h)[–](i).

After adding the base guideline range to the parole eligibility period, the USPC then adds or subtracts months to reflect negative institutional behavior and/or superior program achievement. *See* [*id.*] §[] 2.80(j)[–](l). The final range of months is referred to as the "total guideline range," which is "the amount of time [an offender] may expect to serve with continued good conduct and ordinary program achievement." 65 Fed. Reg. 70,663, 70,664 (Nov. 27, 2000). Until a parole candidate has served a period of time equal to the bottom of his total guideline range, the candidate is presumed to be unsuitable for parole. *See* 28 C.F.R. §[] 2.80(h)[–](i), [](l).

Finally, similar to the 1987 Regulations, the 2000 Guidelines permit the USPC to deny parole to a candidate who is presumptively eligible under "unusual circumstances." The 2000 Guidelines provide examples of "unusual circumstances" but do not limit the discretion of the USPC to depart on any basis that it classifies as "unusual" except that it cannot have been "fully taken into account in the guidelines." [*Id.*] § 2.80(n).

*Sellmon I*, 551 F. Supp. 2d at 72–73.

## C.   History of Plaintiff's Parole Hearings.

The Middle District of Pennsylvania also succinctly set forth relevant background

information on Plaintiff's four parole hearings:[4]

---

[4] *See* discussion *supra* note 1.

During his initial parole hearing before the Parole Commission on May 9, 2001 [(the "2001 hearing")], in determining Institutional Factors, the Hearing Examiner made a finding based in part on the weapons charge for which Wilson had been found not guilty in his 1987 jury trial in the Eastern District of Virginia. Based on that finding, a period of twelve (12) to sixteen (16) months was added to Wilson's base guideline range.  Wilson's Total Guideline Range was determined to be 324–350 months.

. . . .

Following the hearing, a Notice of Action dated July 23, 2001 issued denying parole and continuing for a Three Year Reconsideration Hearing in May 2004 after the service of thirty-six (36) months from his hearing date.

. . . .

In a prior habeas action before [the U.S. District Court for the Middle District of Pennsylvania], Wilson claimed that the Hearing Examiner's actual on the record reasoning process regarding the determination that Wilson was in possession of a knife was based on an inaccurate factual predicate. . . . [B]y Notice of Action dated January 26, 2005, the Parole Commission re-opened Wilson's case for a special reconsideration hearing at which it would not include the previously assessed twelve (12) to sixteen (16) months for possession of a knife that previously had been included in calculating his guideline range. Because Respondents agreed to afford Wilson the relief he sought in his petition, by Order dated January 28, 2005, the petition was dismissed as moot.

On June 22, 2004, while his prior habeas petition was pending, Petitioner's Three-Year Reconsideration Hearing was held [(the "2004 hearing")]. Because the Parole Commission had not yet issued its decision that it would not consider the knife charge in calculating Wilson's base guideline range, the knife charge again was considered, and Wilson's Total Guideline Range again was calculated to be 324–350 months.

In a Notice of Action dated July 7, 2004, the Parole Commission denied parole and continued to a Three-Year Reconsideration Hearing in June 2007.  The Notice indicated that, as of June 22, 2004, Wilson had been confined for a total of 343 months.

Pursuant to its decision to calculate Wilson's Total Guideline Range without assessing the twelve (12) to sixteen (16) months for possession of a knife, on January 26, 2005, the Parole Commission issued a Notice of Action pursuant to 28 C.F.R. § 2.75(e) scheduling a special reconsideration hearing.  The Notice indicated that, if no other changes are made to the guidelines, Wilson's range would be 312–334 months.

On March 28, 2005, the Commission conducted Wilson's Special Reconsideration Hearing [(the "2005 hearing")].  The Hearing Summary noted Wilson's confirmation of the fact that he had been confined for 353 months.  The Hearing Examiner stated that, although the Notice of Action showed that the guideline range would be 312–334 months, the Examiner calculated the guideline range at 312–324 months.  Even so, the Examiner stated that, "In considering all

9

the information, this Examiner concurs that the subject is a more serious risk than indicated by his SFS. These risk factors were defined in the NOA dated 7/7/2004."  The Examiner made a recommendation to deny parole, but to continue to a presumptive parole after the service of 372 months on October 26, 2006 with Special Conditions of Mental Health and Drug Aftercare.  However, on April 15, 2005, the Executive Reviewer added the following comment to the Hearing Summary: "I disagree with setting a release date at this hearing for the reasons outlined in the NOA dated 7/[7]/04, which are still applicable at this hearing. A reconsideration hearing in 36 months is recommended."

On April 21, 2005, a Notice of Action issued denying parole. Pursuant to 28 C.F.R. [§] 2.75, following an initial or subsequent hearing for a District of Columbia offender, the Commission may, inter alia, set a presumptive parole date up to three (3) years from the date of the hearing, or schedule a reconsideration hearing three years from the month of the hearing.  Although the Commission recognized Wilson's eligibility for consideration under its presumptive release date policy in the Notice of Action, it exercised its discretion to continue his case to a Three-Year Reconsideration Hearing in March 2008 [(the "2008 hearing")].

[O]n June 3, 2008, the Parole Commission issued a Notice of Action denying parole and continuing to a Three-Year Reconsideration Hearing in April 2011.

*Wilson*, 2010 WL 569554, at \*3–4 (internal citations and footnotes omitted).

### D.   Summary of Plaintiff's Claims and Defendants' Motion.

Plaintiff commenced this action under 42 U.S.C. § 1983 against three current USPC Commissioners—Isaac Fulwood, Cranston Mitchell, and Patricia K. Cushwa—and one former USPS Commissioner—Edward F. Reilly, Jr.  Compl. at 1, ECF No. 1[5]; *The Chairman and Commissioners*, U.S. Parole Comm'n, U.S. Dep't of Justice, http://www.justice.gov/uspc/executive.htm (last visited Mar. 28, 2011) (identifying all named defendants except Mr. Reilly as current commissioners).  Plaintiff alleges that in each of his four parole hearings, the Commission (1) violated the *Ex Post Facto* Clause of the United States Constitution by applying

---

[5] Plaintiff attaches several pages to the form he used to file his complaint.  *See* Compl. The form lacks page numbers, and the attached pages are numbered separately.  *See id.*  The Court will therefore cite to page numbers generated by the ECF header.  *But cf. The Bluebook: A Uniform System of Citation* R. B.7.1.4, at 21 (Columbia Law Review Ass'n et al. eds., 19th ed. 2010) (recommending against citation to ECF pagination in lieu of original pagination).

the 2000 Guidelines instead of the 1987 Regulations to his D.C. Code offenses (the "first

allegation"), (2) violated the *Ex Post Facto* Clause with respect to the SRA and his U.S. Code

offense (the "second allegation"), and (3) wholly failed to conduct a hearing on his U.S. Code

offense, in violation of the bifurcated scheme of 28 C.F.R. § 2.65 (the "third allegation").

Compl. at 5–7, 10–11.  As relief, Plaintiff requests "retroactive application of a parole hearing

for the U.S. Code sentence pursuant to 28 C.F.R. § 2.65 and retroactive application of D.C.

guidelines pursuant to [§] 2.65 [and the] 1987 [Regulations]."  Compl. at 5.

   Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure

12(b)(1) for lack of subject-matter jurisdiction and under Federal Rule of Civil Procedure

12(b)(6) for failure to state a claim upon which relief may be granted.  *See* Defs.' Mot. to

Dismiss, ECF No. 13; Defs.' Mem. of P. & A. in Supp. of Their Mot. to Dismiss Pl.'s Compl.,

ECF No. 13 [hereinafter Mem.].  Defendants first argue that Plaintiff's second allegation has

been adjudicated in a petition for the writ of habeas corpus denied by the U.S. District Court for

the Middle District of Pennsylvania, thus making this case res judicata under principles of both

claim and issue preclusion (the "first argument").  Mem. at 11–12.  Defendants next argue that

Plaintiff cannot prevail on his first allegation, because his D.C. Code offenses predate the

adoption of the 1987 Regulations (the "second argument").  *Id.* at 12–13.  Defendants' third

argument is that Plaintiff cannot prevail on his third allegation, because, as to the U.S. Code

violation, Plaintiff has not cited any federal law or constitutional provision that entitles him to a

proper calculation of his federal time (the "third argument").  *Id.* at 14–15.  Defendants' fourth

and final argument is that Plaintiff cannot prevail on any of his claims against the former

Commissioner (the "fourth argument").  *Id.* at 15.

**III.   Standards of Review.**

**A.   Rule 12(b)(1).**

A plaintiff bears the burden of establishing that a federal court has subject-matter

jurisdiction.  *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007); *see also*

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts

of limited jurisdiction . . . [and it] is to be presumed that a cause lies outside this limited

jurisdiction.").  In evaluating a motion to dismiss under Rule 12(b)(1), "the court may 'consider

the complaint supplemented by undisputed facts evidenced in the record, or the complaint

supplemented by undisputed facts plus the court's resolution of disputed facts.'"  *Coalition for*

*Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l*

*Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)); *see also Jerome Stevens Pharm., Inc. v.*

*FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside

the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").  A court

must, however, accept as true all factual allegations contained in the complaint and afford the

plaintiff the benefit of all favorable inferences that can be drawn from the alleged facts.

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164

(1993).

**B.   Rule 12(b)(6).**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. (8)(a), "in

order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it

rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355

U.S. 41, 47 (1957)).  Although "detailed factual allegations" are not necessary to withstand a

Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must furnish "more than

labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Id.*

"Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

enhancement.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at

557).  Rather, a complaint must contain sufficient factual allegations that if accepted as true,

"state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at

1949 (citing *Twombly*, 550 U.S. at 556).

When considering a motion to dismiss for failure to state a claim, the court must construe

the complaint in a light most favorable to the plaintiff and must accept as true all reasonable

factual inferences drawn from well pleaded factual allegations.  *In re United Mine Workers of*

*Am. Emp. Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).  However, a plaintiff must

provide more than just "a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S.

Ct. at 1950.  When a complaint's well pleaded facts do not enable a court, "draw[ing] on its

judicial experience and common sense . . . to infer more than the mere possibility of

misconduct," the complaint has not shown that the pleader is entitled to relief.  *Id.*[6]

## IV.    Analysis.

---

[6] Defendants attach to their motion several documents concerning Plaintiff's sentencing
and parole determinations.  *See* Mot. Exs. A–G, ECF No. 13-1.  "If, on a motion under Rule
12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the
motion must be treated as one for summary judgment under Rule 56."  The Court hereby
excludes the matters outside the pleadings attached to Defendants' motion under Rule 12(b)(6),
and will therefore not convert the motion to one for summary judgment under Rule 56.

Defendants' motion will not be granted under Rule 12(b)(1), because Defendants do not actually make any argument under that Rule.  However, Defendants' motion will be granted under Rule 12(b)(6).

### A.   Defendants Make No Argument Under Rule 12(b)(1).

Defendants do not specify which of their arguments are made under Rule 12(b)(1) and which are made under Rule 12(b)(6).  *See* Mem.  The Court infers, however, from the language in Defendants's memorandum that their second, third, and fourth arguments are made under Rule 12(b)(6).  *See Mem.* at 12–15 (arguing that "Plaintiff has *failed to state* an ex post facto issue" as to his first allegation, that Plaintiff's third allegation "is *not cognizable* under 42 U.S.C. § 1983, and that as to all allegations the former Commissioner "is *not in a position to grant* the injunctive relief plaintiff seeks") (emphasis added).  Similar language implying reliance on Rule 12(b)(6) is absent from Defendants' first argument.

Perhaps Defendants intend, then, to make subject-matter jurisdictional arguments under Rule 12(b)(1) in their first argument: that this case is res judicata.  But "the defense of res judicata . . . while having a 'somewhat jurisdictional character,' does not affect the subject[-]matter jurisdiction of the district court."  *Smalls v. United States*, 471 F.3d 186, 189 (D.C. Cir. 2006) (quoting *SBC Commc'ns Inc. v. FCC*, 407 F.3d 1223, 1229–30 (D.C. Cir. 2005)) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005); *N.Y. Shipping Ass'n, Inc. v. Fed. Mar. Comm'n*, 854 F.2d, 1338, 1352 (D.C. Cir. 1988)).  Defendants therefore make no argument that challenges the Court's subject-matter jurisdiction in this case.

### B.   Defendants' Motion Will Be Granted Under Rule 12(b)(6).

First, Plaintiff is not required to bring his claim in a habeas petition, because granting the

requested relief will not necessarily result in his immediate or speedier release from confinement. Second, this case is partially res judicata: claim preclusion precludes all three of Plaintiff's allegations, but only concerning the 2004 and 2005 hearings, and only against the current Commissioners; and issue preclusion further precludes Plaintiff's second allegation, for all hearings, but only against the former Commissioner. Third, Plaintiff's third allegation is not actionable under § 1983, because the alleged right derives from a regulation, not a federal law or constitutional provision. Fourth, all of Plaintiff's allegations made against the former Commissioner fail, because such Commissioner lacks authority to provide the relief requested. Fifth, Plaintiff's first allegation fails because Plaintiff is not entitled to application of the 1987 Regulations as requested, and even if Plaintiff had requested application of the 1972 Regulations, the Board's discretion under the 1972 Regulations was so broad that Plaintiff has not effectively pled that application of the 2000 Regulations significantly increased the risk of his longer incarceration. Sixth and finally, Plaintiff's second allegation fails because Plaintiff misconstrues the SRA *ex post facto* issue and thus fails to plead a claim based on that issue.

### 1.   Plaintiff May Proceed Under § 1983.

Although Defendants have not asserted that Plaintiff must proceed with his claims in a habeas petition rather than under § 1983, *see* Mem., because the Court must *sua sponte* dismiss claims asserted by a plaintiff proceeding *in forma pauperis* upon which relief may not be granted, 28 U.S.C. § 1915(e)(2), and because Plaintiff is proceeding *in forma pauperis*, Order, ECF No. 4, the Court will consider whether Plaintiff must so proceed, such that he fails to state a § 1983 claim upon which relief may be granted. A "prisoner's challenge to the determination of his eligibility for parole . . . attack[s] the 'fact or duration' of confinement" and "therefore,

habeas is the sole remedy available to such a prisoner." *Chatman-Bey v. Thornburgh*, 864 F.2d 804, 810 n.5 (D.C. Cir. 1988). However, the Supreme Court has explained that, as to duration, this requirement that such prisoners seek habeas relief applies only "when they seek to invalidate the duration of their confinement[ ]either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005). Claims under "§ 1983 remain[] available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner." *Id.*

In this case, Plaintiff's challenge under § 1983 would not necessarily spell his immediate or speedier release. Plaintiff merely asks for a rehearing with reconsideration of his parole eligibility under the bifurcated scheme of 28 C.F.R. § 2.65, to include application of the 1987 Regulations to his D.C. Code violations, and presumably to also include application of the regulations in 28 C.F.R. § 2.20 to his U.S. Code violation. Compl. at 5. He does not specifically request that parole be granted now or at some other date. *See id.* As to the 1987 Regulations, "the Commission can consider any unique circumstances that are not taken into account . . . but that none-the-less should impact on the release decision." *Sellmon I*, 551 F. Supp. 2d at 71 (internal quotation marks omitted). Therefore, even if this Court were to grant Plaintiff a rehearing and order application of the 1987 Regulations, Plaintiff would not necessarily win parole sooner than otherwise.

As to the regulations in § 2.20, based on Plaintiff's allegations, granting a rehearing and ordering application of those regulations would also not necessarily lead to a decrease in the duration of his incarceration. Under the bifurcated approach of § 2.65, the Commission is

16

required to first calculate under § 2.20 a prisoner's "federal time" for U.S. Code offenses, § 2.65(c), then to conduct a parole hearing for D.C. Code offenses "not later than four months prior to the parole eligibility date, or the expiration of the 'federal time,' whichever is later," § 2.65(e). Plaintiff alleges that the Commission never calculated his federal time, and instead simply waited until his three-year federal portion of his aggregated sentence had been served, then held a hearing on his D.C. Code offenses. Compl. at 11 ("Plaintiff has never seen the U.S. Parole Commission concerning this (federal time) crime/sentence."). Assuming this to be true, even if the Court were to order a calculation of Plaintiff's federal time under § 2.20, such time would not necessarily end up being less than three years, because § 2.65 permits the Commission to calculate federal time as an amount up to and including "the limit of the U.S. Code sentence." § 2.65(d). Because neither aspect of the relief Plaintiff seeks would necessarily spell his immediate or speedier release, Plaintiff may initially proceed with his claims under § 1983. However, as discussed below, Plaintiff fails to state a § 1983 claim upon which relief may be granted.

  **2.    Plaintiff Fails to State a Claim Upon Which Relief May Be Granted to the Extent That This Case Is Partially Res Judicata.**

Res judicata encompasses the doctrines of claim preclusion and issue preclusion. Both claim and issue preclusion bar litigation of some claims and issues alleged by Plaintiff in this case.

  **a.    The Doctrine of Res Judicata Includes Claim Preclusion and Issue Preclusion.**

"The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues." *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944,

946 (D.C. Cir. 1983).  The doctrine has two components: claim preclusion and issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).  Claim preclusion incorporates the principles of merger—"the extinguishment of a claim in a judgment for plaintiff"—and bar—"the extinguishment of a claim in a judgment for defendant."  Restatement (Second) of Judgments, ch. 3, Introductory Note; *Taylor*, 553 U.S. at 892 n.5 (citing *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 77 n.1 (1984)).  Issue preclusion incorporates the principles of direct estoppel—"the effect of the determination of an issue in another action between the parties on the same claim"—and collateral estoppel—such effect in another action on "a different claim." Restatement (Second) of Judgments, ch. 3, Introductory Note; *Taylor*, 553 U.S. at 892 n.5 (citing *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 77 n.1 (1984)).

"Under claim preclusion, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Sheppard v. District of Columbia*, No. 10-cv-834, 2011 WL 710211, at *3 (D.D.C. Feb. 22, 2011) (quoting *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002)).  "A judgment on the merits is one that 'reaches and determines the real or substantial grounds of action or defense as distinguished from matters of practice, procedure, jurisdiction or form.'" *Id.* at *5 (quoting *Saylor v. Lindsley*, 391 F.2d 965, 968 (2d Cir. 1968) (internal citations omitted)) (citing *Nwachukwu v. Karl*, 222 F.R.D. 208, 212 (D.D.C. 2004) (noting the judicial goal of "deciding cases on their merits, as opposed to procedural mishaps dictating the outcome")).  "Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'" *Drake*, 291 F.3d at 66 (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)).  To determine whether two cases share the same nucleus of facts, courts consider

"whether the facts are related in time, space, origin, or motivation[;] whether they form a convenient trial unit[;] and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 78 (D.C. Cir. 1997). "A privy is one so identified in interest with a party to the former litigation that he or she [or it] represents precisely the same legal right in respect to the subject matter of the case"—in other words, a person who or entity that is in privity with the party. *Hafezi v. Construction & Dev., Inc.*, No. 04-cv-2198, 2006 WL 1000339, at *6 (D.D.C. Apt. 14, 2006) (internal quotation marks omitted).

Under the collateral estoppel form of issue preclusion, "'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Sheppard*, 2011 WL 710211, at *3 (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)). This form of issue preclusion applies if three conditions are met: "First, the issue must have been actually litigated, that is, contested by the parties and submitted for determination by the court. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in the first [case]. Third, preclusion in the second [case] must not work an unfairness." *Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983) (internal citations, quotations, and quotation marks omitted). Issue preclusion can work an unfairness where "the party to be bound lacked an incentive to litigate" in the first action the issue to be precluded in the second. *Id.*

19

Defendants move the court to dismiss Plaintiff's allegations as precluded under both claim preclusion and issue preclusion,[7] arguing that the Middle District of Pennsylvania has already decided the claim that and issue whether the Commission violated the *Ex Post Facto* Clause with respect to the SRA and Plaintiff's U.S. Code offense, Mem. at 11 ("Plaintiff appears to be attempting to relitigate the SRA issue he raised and the *ex post facto* claim challenging the Commissions' use of its own regulations."), and that "Plaintiff's *ex post facto* claim based on the Commission's use of its own regulations is similarly barred because he could have raised those claims in the earlier action," *id.* at 12.  Plaintiff counters that "[t]he habeas case is not yet final and is on appeal," so it should not be given preclusive effect.  Pl.'s Mot. in Opp'n, and in Response to Defs.' Mot. to Dismiss at 2, ECF No. 17 [hereinafter Opp'n].  But "[u]nder well-settled federal law, the pendency of an appeal does not diminish the res judicata effect of a judgment rendered by a federal court."  *Hunt v. Liberty Lobby, Inc.*, 707 F.2d 1493, 1497–98 (D.C. Cir. 1983) (citing *Huron Holding Co. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 188–89 (1941); *Reed v. Allen*, 286 U.S. 191, 199 (1932)) (italicization omitted).  The Court also notes that, as a general matter, preclusive effect may be had from claims and issues litigated in a habeas case to those in a § 1983 case.  *See, e.g.*, *Hawkins v. Risley*, 984 F.2d 321, 323 (9th Cir.

---

[7] Actually, Defendants argue that "Plaintniff's [c]laims are [b]arred by [r]es [j]udicata *or* [c]ollateral [e]stoppel."  Mem. at 11 (emphasis added).  But as explained above, res judicata is not mutually exclusive of collateral estoppel; rather, collateral estoppel is a form of issue preclusion, and issue preclusion is a part of the doctrine of res judicata, along with claim preclusion.  *See* Restatement (Second) of Judgments, ch. 3, Introductory Note.

The Court is aware, however, that "[t]he preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years," and that the term "res judicata" is often used as a synonym for claim preclusion, to the exclusion of issue preclusion.  *Migra*, 465 U.S. at 77 n.1.  The Court therefore construes Defendant's use of the term "res judicata" to mean "claim preclusion."

20

1993) (giving claim-preclusive effect in a § 1983 case to claims litigated in a habeas decision);

*Truesdale v. U.S. Dep't of Justice*, 657 F. Supp. 2d 219 D.D.C. 2009 (giving issue-preclusive

effect in a § 1983 case to issues litigated in a habeas decision). The Court will therefore

evaluate, under the rubric discussed above and in keeping with the goal of judicial efficiency,

whether to give preclusive effect to claims or issues litigated in Plaintiff's earlier habeas case.

### b.       Plaintiff's Allegations Are Partially Claim-Precluded.

In *Wilson*, the Middle District of Pennsylvania adjudicated on the merits a habeas petition

filed by Plaintiff against the U.S. Parole Commission and his warden.  *See* 2010 WL 569554.

Plaintiff only challenged his 2004 and 2005 proceedings.  *Id.* at *2 n.3.  Specifically, he alleged

that his U.S. Code violation occurred in 1987, between enactment of the 1984 SRA that cabined

the Commission's discretion to recommend parole beyond the guideline range applicable to U.S.

Code offenses and enactment of the 1987 amendment that restored that discretion.  *Id.* at *7.  He

thus argued that "the Commission's decisions on July 7, 2004 and April 21, 2005 departing from

the guidelines to deny parole violate the *Ex Post Facto* Clause."  *Id.*

The *Wilson* Court noted that the Court of Appeals for the Third Circuit has "held that the

application of the 1987 amendment . . . to individuals who committed crimes in violation of the

United States Code between the time of the enactment of the SRA in 1984 and its amendment in

1987 violates the *Ex Post Facto* Clause."  *Id.* (citing *Lyons v. Mendez*, 303 F.3d 285, 293 (3d

Cir. 2002)).  But the *Wilson* Court concluded that the Commission only "applied the regulations

that apply to District of Columbia Code Prisoners and Parolees set forth at 28 C.F.R. § 2.70 *et

seq.*, rather than the regulations that apply to United States Code Prisoners and Parolees set forth

at 28 C.F.R. § 2.1 *et seq.*," because Plaintiff's "District of Columbia sentences were imposed

under the District of Columbia statute, not under the SRA." *Wilson*, 2010 WL 569554, at *7.

The *Wilson* Court thus decided that Wilson's claim—that at his 2004 and 2005 hearings, the

Commission applied parole regulations for U.S. Code offenses *ex post facto* under the 1987

amendment to the SRA, rather than under the 1984 SRA—lacked support, because the

Commission did not apply parole regulations applicable to U.S. Code offenses *at all*, but instead

only applied parole regulations applicable to D.C. Code offenses.  *Id.*

In this case, Plaintiff alleges that "the U.S. [C]ode sentence of three years[] has an *[E]x*

*[P]ost [F]acto* [C]lause involved in that conviction" and cites *Lyons*, 303 F.3d at 293.  Compl. at

10–11.  Defendants are correct, then, that Plaintiff appears to be relitigating his *ex post facto*

allegation concerning the SRA.  Plaintiff could have also raised his two other allegations—that

the Commission should have conducted a parole calculation with respect to his federal time, and

that the Commission should have applied the 1987 Regulations instead of the 2000 Guidelines to

his D.C. Code offenses—in his habeas proceeding, but he did not do so.  *See Wilson*, 2010 WL

569554.

Unlike in the habeas case, which only concerned the 2004 and 2005 parole hearings,

Plaintiff extends his arguments in the instant case to the 2001 and 2008 parole hearings as well.

Compl. at 6–7, 10–11.  Allegations concerning the 2001 and 2008 hearings do not share the same

nucleus of fact as allegations concerning the 2004 and 2005 hearings, because although the

allegations about all four hearings are similar, each hearing was a distinct occurrence in time that

cannot be assumed to be sufficiently similar to warrant the extension of claim preclusion from

the hearings about which Plaintiff's allegations were litigated (or were not raised)—the 2004 and

2005 hearings)—to the hearings about which Plaintiff has not litigated at all—the 2001 and 2008

hearings.  Any claim-preclusive effect will thus be limited to claims made in this case about the 2004 and 2005 hearings.

In addition, unlike the habeas case, where Plaintiff sued the Commission itself and his warden, *see id.* at *1, Plaintiff now is suing individual Commissioners—three current Commissioners and one former Commissioner.  Compl. at 4.  "[T]he government, its officers, and its agencies are regarded as being in privity for [claim-preclusive] purposes."  *Estevez v. Nabers*, 219 F.2d 321, 323 (5th Cir. 1955) (citing *Di Silvestro v. Gray*, 194 F.2d 355 (D.C. Cir. 1952)).  *See, e.g.*, *Warren v. McCall*, 709 F.2d 1183, 1184–85 (7th Cir. 1983) (finding that officers of the Commission were in privity with a warden for the purposes of claim preclusion).  The current Commissioners are therefore privies of the Commission and warden from the habeas case and may assert claim preclusion in this case.  Former Commissioner Reilly, however, lacks such privity because, lacking any authority as a current Commissioner, his legal interests are not sufficiently aligned with those of the Commission itself, unlike the interests of the current Commissioners.  *See Fletcher v. District of Columbia*, 481 F. Supp. 2d 156, 163 n.9 (D.D.C. 2007) [hereinafter *Fletcher III*] ("[F]ormer Commissioners . . . cannot act on future parole or reparole matters involving plaintiff or anyone else."), *vacated in part on other grounds sub nom*, *Fletcher v. U.S. Parole Comm'n*, 550 F. Supp. 2d 30 (D.D.C. 2008).  Any claim-preclusive effect will thus be limited to claims made against only the current Commissioners.

In summation, Plaintiff is attempting to relitigate the SRA issue previously adjudicated on the merits in his habeas proceeding as to the 2004 and 2005 hearings; Plaintiff could have previously litigated the two other issues he raises in this case as to those hearings; the instant case concerns the 2001, 2004, 2005, and 2008 hearings; and Plaintiff has sued different

defendants in the instant case, three of whom are in privity with the respondents in the habeas proceeding, one of whom is not in privity.  Claim-preclusive effect therefore applies to all three of Plaintiff's allegations, but only concerning the 2004 and 2005 hearings, and only concerning the current Commissioners.  Defendants' motion will be granted as to these claim-precluded allegations, such that at this point, only the following will remain:  all three of Plaintiff's allegations, with respect to the 2001 and 2008 hearings, against the current Commissioners, and all three allegations, with respect to all hearings, against the former Commissioner.

### c.      Plaintiff's Allegations Are Partially Issue-Precluded.

Issue preclusion cannot apply to any issues in allegations concerning the 2001 and 2008 hearings, because those issues were not actually litigated by the *Wilson* court, which limited its decision to issues concerning the 2004 and 2005 hearings.  *See* 2010 WL 569554, at *2 n.3. Preclusion of issues relating to the 2001 and 2008 hearings therefore fails the first prong of *Otherson*, which requires an issue to have been actually litigated to be precluded.  *See* 711 F.2d at 273.

But issue preclusion *does* apply to the SRA issue concerning the 2004 and 2005 hearings, which remains in Plaintiff's allegations against former Commissioner Reilly.  That issue was actually and necessarily decided by the *Wilson* court, which specifically concluded that "the Commission did not rely on the 1987 amendment to the SRA in rendering its decisions outside the guidelines to deny parole" in the 2004 and 2005 hearings.  *See* 2010 WL 569554, at *2 n.3, *6–7.  Further, there is no reason to think that Plaintiff lacked a strong incentive to litigate this issue in the habeas proceeding; it was the entire basis of his claim.  There is therefore no unfairness in giving preclusive effect to that issue in this case.  All three *Otherson* prongs thus

24

are satisfied.  *See* 711 F.2d at 273.  The SRA issue concerning the 2004 and 2005 hearings and

directed at former Commissioner Reilly is precluded.  Defendants' motion will be granted as to

this issue-precluded allegation, such that at this point, only the following will remain:  all three

of Plaintiff's allegations, with respect to the 2001 and 2008 hearings, against the current

Commissioners; and only two allegations—that the Commission should have conducted a parole

calculation with respect his federal time, and that the Commission should have applied the 1987

Regulations instead of the 2000 Guidelines to his D.C. Code offenses—with respect to

all hearings, against former Commissioner Reilly.

### 3. Plaintiff Fails to State a Claim Upon Which Relief May Be Granted to the Extent That Plaintiff's Third Allegation Is Not Cognizable Under § 1983.

In relevant part, § 1983 provides for recovery against any "person who, under color of

any statute . . . [or] regulation . . . of . . . the District of Columbia, subjects, or causes to be

subjected, any citizen of the United States or other person within the jurisdiction thereof to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the

United States.  42 U.S.C. § 1983.  Section 1983 thus provides the availability of injunctive relief

for the deprivation of some right, but such right must be rooted in the Constitution or a federal

law.  *Id.*; *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).  Therefore, where such right is rooted

in a mere regulation promulgated by the Executive, injunctive relief for the deprivation thereof

cannot be had under § 1983.  *Edwards v. District of Columbia*, 821 F.2d 651, 665 (D.C. Cir.

1987) (noting that an "agency regulation can define the exact scope of a duty that Congress has

clearly created" by statute, such that the regulation is actionable under § 1983, "[b]ut where

Congress has not clearly created any duty, there is no § 1983 right for regulations to define.");

*see also Smith v. Palmer*, 24 F. Supp. 2d 955, 962–63 (N.D. Iowa 1998) (noting that regulations

are actionable under § 1983 only "if a statute creates enforceable rights" and "implementing

regulations under statute . . . further define those enforceable rights," but citing conflicting

authorities).

Under the bifurcated approach enumerated in 28 C.F.R. § 2.65, the Commission is

required to apply two sets of regulations for prisoners with aggregated U.S. and D.C. Code

sentences. *See* discussion *supra* Part.II.B.  Plaintiff alleges that the Commission never

calculated his federal time for his U.S. Code offense, and instead simply waited until his three-

year federal portion of his aggregated sentence had been served, then held a hearing on his D.C.

Code offenses.  Compl. at 6–7, 11 ("Plaintiff has never seen the U.S. Parole Commission

concerning this (federal time) crime/sentence.").  Plaintiff alleges that the Commission only

completed one half the bifurcated approach and thus failed to properly apply § 2.65.  *Id.*  In

essence, Plaintiff alleges that he has a right to have his federal time calculated in accordance

with the regulations at 28 C.F.R. § 2.20, as mandated by § 2.65(b).  Opp'n at 4, 9 (arguing that

"[t]the U.S. Code sentence *must* be reconciled with the D.C. Code sentence," but that "[P]laintiff

was not given a parole hearing for his U.S. Code sentence"); *see also id.* at 12 (quoting *Thomas

v. Brennan*, 961 F.2d 612, 617 (7th Cir. 1992) (discussing the bifurcated U.S./D.C. parole regime

and noting that "the Commission . . .  may not shunt aside one regime while paying too much

heed to the other")).  But for the source of this right, Plaintiff only identifies § 2.65.  Plaintiff

simply does not point to any federal statute or constitutional provision that entitles him to a

calculation of his federal time under § 2.20.  *See* Compl.; Opp'n.[8]  Plaintiff therefore fails to state

---

[8] Plaintiff does pepper his papers with assertions of *ex post facto* violations, *see* Compl.; Opp'n, which would implicate § 1983, but such assertions do not apply to his third allegation.

26

a claim upon which relief may be granted as to his third allegation.  Defendants' motion will be

granted as to this allegation, such that at this point, only the following will remain:  Plaintiff's

two *ex post facto* allegations, with respect to the 2001 and 2008 hearings, against the current

Commissioners; and only one allegation—that the Commission should have applied the 1987

Regulations instead of the 2000 Guidelines to his D.C. Code offenses—with respect to

all hearings, against the former Commissioner.

### 4. Plaintiff Fails to State a Claim Upon Which Relief May Be Granted as to the Remaining Allegation Against the Former Commissioner.

In relevant part, § 1983 provides for recovery against any "person who, under color of

any statute . . . of . . . the District of Columbia, subjects, or causes to be subjected, any citizen of

the United States or other person within the jurisdiction thereof to the deprivation of any rights,

privileges, or immunities secured by the Constitution."  42 U.S.C. § § 1983.  "[A]ny Act of

Congress applicable exclusively to the District of Columbia shall be considered to be a statute of

the District of Columbia" for the purposes of § 1983.  *Id.*  "Because the D.C. Revitalization Act

is such a statute," the Court of Appeals for the District of Columbia has concluded that

"members of the United States Parole Commission are amenable to suit under § 1983 for actions

taken pursuant to that Act."  *Fletcher v. District of Columbia*, 370 F.3d 1223, 1227 (D.C. Cir.

2004), *vacated in part on other grounds*, 391 F.3d 250 (D.C. Cir. 2004); *Fletcher III*, 481 F.

Supp. 2d at 162–63 (noting that although "sovereign immunity is not waived  under § 1983,"

because "[t]hat immunity . . . does not extend to injunctive relief against officials in their official

---

His *ex post facto* assertions relate only to alleged application of the 2000 Guidelines in lieu of
the 1987 Regulations for his D.C. Code offenses, and to alleged application of the 1987
amendment to the SRA instead of the 1984 version of the SRA for his U.S. Code offense.  Here,
however, Plaintiff asserts that *nothing* was applied for his U.S. Code offense.

capacities," a "plaintiff may pursue prospective injunctive . . . relief against

the . . . Commissioners in their official capacities"); *see also Sellmon I*, 551 F. Supp. 2d at 83

n.2.

But a plaintiff may only pursue such relief against "*present* individual Commissioners,"

not former commissioners. *Fletcher III*, 481 F. Supp. 2d at 163 (emphasis added). Simply put,

"[p]rospective injunctive relief against the former Commissioners makes no sense as they cannot

act on future parole or reparole matters involving plaintiff or anyone else." *Id.* at 163 n.9.

Plaintiff therefore fails to state any claim upon which relief may be granted against former

Commissioner Reilly. Defendants' motion will be granted as to all allegations against this

defendant, such that at this point, only the following will remain: Plaintiff's two *ex post facto*

allegations, with respect to the 2001 and 2008 hearings, against the current Commissioners.

### 5.    Plaintiff Fails to State a Claim Upon Which Relief May Be Granted as to the Remaining Portion of his First Allegation.

"The *Ex Post Facto* Clause of the United States Constitution prohibits retroactive

increases in punishment for a crime after its commission." *Sellmon I*, 551 F. Supp. 2d at 84

(citing U.S. Const. art. I, § 9, cl. 3; *Collins v. Youngblood*, 497 U.S. 37, 42–43 (1990)). "It is

meant 'to assure that legislative Acts give fair warning of their effect and permit individuals to

rely on their meaning until explicitly changed.'" *Id.* (quoting *Weaver v. Graham*, 450 U.S. 24,

28–29 (1981)). "The Supreme Court has held that a retroactively applied parole regulation,

guideline, or policy statement may violate the *Ex Post Facto* Clause if it creates 'a significant

risk' of 'a longer period of incarceration than under the earlier rule.'" *Id.* (quoting *Garner v.

Jones*, 529 U.S. 244, 255 (2000)).

28

In the remaining portion of Plaintiff's first allegation, Plaintiff alleges that the Commission violated the *Ex Post Facto* Clause by applying the 2000 Guidelines—i.e., those enumerated at 28 C.F.R. § 2.80—instead of the 1987 Regulations to his D.C. Code offenses during his 2001 and 2008 parole hearings, because such application "added additional months/points for crimes of violence and the death of the victim, and added months for prior disciplinary infractions," which "increase[d Plaintiff's] length of incarceration." Compl. at 6–7, 10. But Defendants correctly point out that "'a plaintiff may invoke an *ex post facto* protection only on the basis of the parole regime that was in effect at the time he committed his offense.'" Mem. at 16 (quoting *Austin*, 606 F. Supp. 2d at 7–8 (citing *Sellmon I*, 551 F. Supp. 2d at 85; *Weaver v. Graham*, 450 U.S. 24, 30 (1981))). The parole regime in effect at the time Plaintiff committed his D.C. Code offenses was promulgated in 1972. *See* 9 D.C.R.R. ch. 2, § 105.1 (1972), discussion *supra* Part II.B. The Court therefore cannot grant the specific relief Plaintiff seeks—application of the 1987 Regulations—and Defendants' motion will be granted as to that relief. However, the Court will separately examine whether Plaintiff states an *ex post facto* claim upon which relief can be granted for application of the 2000 Guidelines in lieu the 1972 Regulations.

Under § 105.1 of the 1972 Regulations as well as the same section of the 1981 Regulations (collectively, the "pre-1987 Regulations") the D.C. Parole Board operated with discretion that was "almost unbridled," *Sellmon I*, 551 F. Supp. 2d at 86 n. 15, and "totally unfettered," *Sellmon v. Reilly*, 561 F. Supp. 2d 46, 50 (D.D.C. 2008), applying loose guidelines and no formal point-scoring system, *Austin*, 606 F. Supp. 2d at 9. *See* discussion *supra* Part II.B. "The pre-1987 Regulations are thus of minimal help in demonstrating how the Board exercised

its discretion in practice prior to 1987." *Sellmon I*, 551 F. Supp. 2d at 86 n.15.  In other words, the pre-1987 Regulations gave the Board, and now the Commission, so much discretion that the Court simply cannot compare, based on Plaintiff's allegations, how the Commission might have evaluated parole under those regulations with how the Commission did evaluate parole under the modern 2000 Guidelines.  Given the breadth of this pre-1987 discretion and Plaintiff's failure to plead facts sufficient to allow the Court to compare his parole consideration under the 2000 Guidelines to consideration under the pre-1987 Regulations, Plaintiff fails to state a claim upon which relief may be granted as to his first allegation.  Defendants' motion will be granted as to this allegation, such that at this point, only the following will remain: Plaintiff's *ex post facto* allegation concerning the SRA, with respect to the 2001 and 2008 hearings, against the current Commissioners.

### 6.   Plaintiff Fails to State a Claim Upon Which Relief May Be Granted as to the Remaining Portion of his Second Allegation.

In the remaining portion of Plaintiff's second allegation, Plaintiff alleges that "the U.S. [C]ode sentence of three years[] has an *[E]x [P]ost [F]acto* [C]lause involved in that conviction" and cites *Lyons*, 303 F.3d at 293.  Compl. at 10–11.  The Third Circuit in *Lyons* "held that the application of the 1987 amendment . . . to individuals who committed crimes in violation of the United States Code between the time of the enactment of the SRA in 1984 and its amendment in 1987 violates the *Ex Post Facto* Clause," *Wilson*, 2010 WL 569554, at *7 (citing *Lyons*, 303 F.3d at 293), because the 1987 amendment gave the Commission discretion to set release dates for prisoners beyond the date recommended by the regulations applicable to U.S. Code violations, whereas the 1984 SRA cabined that discretion, *see* discussion *supra* Part II.B.

Plaintiff thus appears to be relying on the *Lyons* decision to allege that application of the 2000 Guidelines at his parole hearings violated the *Ex Post Facto* Clause, but such reliance is misplaced.  The 2000 Guidelines, enumerated at 28 C.F.R. § 2.80, apply to D.C. Code offenses, while the SRA *ex post facto* issue identified by *Lyons* concerns application of the other guidelines, enumerated at 28 C.F.R. § 2.20, that apply to U.S. Code offenses (the "Federal Regulations").  *See* discussion *supra* Part II.B.  Whether the Commission applied the 2000 Guidelines in Plaintiff's parole hearings with respect to his D.C. Code offenses has nothing to do with whether the Commission applied the Federal Regulations with respect to his U.S. Code offense, much less whether any application of the Federal Regulations was done with the greater discretion conferred by the 1987 amendment to the SRA or with the lesser discretion of the original 1984 SRA.  The *Wilson* Court, considering only the 2004 and 2005 hearings, thus dispensed with Plaintiff's SRA argument by concluding that the Commission applied the 2000 Guidelines, not the Federal Regulations, 22010 WL 569554, at *7, a conclusion to which this Court gave preclusive effect, *see* discussion *supra* Part IV.B.2.  Similarly, this Court now dispenses with Plaintiff's SRA argument concerning the 2001 and 2008 hearings, because Plaintiff has pled that the Commission applied the 2000 Guidelines, not the Federal Regulations. Plaintiff therefore fails to state a claim upon which relief may be granted as to his second allegation.  Defendants' motion will be granted as to this allegation, such that at this point, no allegations remain.  Plaintiff's case will therefore be dismissed.

**V.      Conclusion.**

For the reasons discussed above, in a separate order to issue this date, Defendants'

motion to dismiss will be granted and Plaintiff's case will be dismissed.

DATE:   March 28, 2011

/s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge